IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                          CASE NO: 21-94 RBW

ANTHONY MARIOTTO
    Defendant.
_____/

**SENTENCING MEMORANDUM**

**COMES NOW**, the Defendant, ANTHONY MARIOTTO, by and through his undersigned counsel, pursuant to Fed. R. Crim. P., 32 and 18 USC §3553(a) and respectfully hereby submits the following Sentencing Memorandum to Aid the Court at sentencing and hereby notifies the Court that he has received and reviewed the Presentence Report (PSR) in the instant matter. After carefully reviewing the PSR, with the Defendant, he has filed one objection to the facts surrounding the civil complaint filed against him. That objection has been sent to the probation officer. The Defendant requests that the court impose a sentence of probation with community service and a fine to account for:

1. His lack of preparation or planning prior to January 6, 2021 to be part of the Capitol breach and his peaceful, non-destructive, and non-violent, behavior that day both outside and inside the Capitol building.

Mr. Mariotto comes before this Court having pled guilty on September 24, 2021, to count V of the Indictment filed on February 8, 2021, charging him with a violation of 40 USC §5104(e)(2)(G). A sentence of twelve (12) months probation with community service and a fine is a reasonable sentence that is "sufficient but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. §3553(a). Under the facts of this case,

1

such a sentence will protect the public and provide just punishment and afford adequate deterrence.

### A. The Trip to the Capitol on January 6, 2021.

Mr. Mariotto's trip to D.C. and his walk to the Capitol.

Mr. Mariotto believed what he had heard from the President himself. That the election had been stolen. He went to D.C. to show support for the soon to be former President by attending his rally and other rallies scheduled on January 5th and January 6th, 2021 at the Ellipse on the Mall. Importantly, although Mr. Mariotto voted for President Trump, his focus was also on the process and not just the result of the election. .

As the day unfolded, he never planned or envisioned entering into the U.S. Capitol. That is, until Trump invited everyone to the March at the Capitol. Mr. Mariotto followed the large crowd there that day with no intention of doing anything but having his voice join the thousands of other peaceful protests. Now, after seeing what really happened that day by watching film on numerous platforms, Mr. Mariotto regrets the fact that he was part of it, albeit a small part of it compared to many other violent protesters who assaulted police officers and caused damage to the Capitol.

### B. MR. MARIOTTO'S ACTIVITIES INSIDE AND OUTSIDE THE CAPITOL.

Officers were able to hold off the excited crowd for approximately an hour, but just after 2:13 pm., the Capitol was breached through a broken window adjacent to the Senate Wing Doors located on the northwest side of the building. The breach spurred the evacuation of Members of Congress and the Vice President. Thirty minutes later, the Senate Wing doors were penetrated by the crowd, pushing the Capitol officers back into the inside

corridor as they tried to prevent further intrusion. Mr. Mariotto was not in the first wave of hundreds of protesters. He could not see what was occurring ahead of him prior to entering the building and had no idea of the violence in other parts of the Capitol. Although we now know through video recordings and personal accounts of law enforcement, that many people in the crowd were violent and pushing officers, etc. Mr. Mariotto was not violent or destructive.

As Mr. Mariotto entered the Capitol, he walked around various hallways, the Crypt of the Capitol, and the Rotunda, during which he was chanting "USA " with the crowd. Prior to leaving the building, Mr. Mariotto posed in the gallery of the Senate Chambers and took a self-photograph otherwise known as a "selfie." He subsequently posted the photo of him in the Senate gallery on Facebook and wrote "I'm in and there are just a few this is our house."

## C. THE CHARGES AND ARREST OF THE MR.MARIOTTO

On January 14, 2021, a Facebook friend of Mr. Mariotto contacted the FBI and reported that Mr. Mariotto posted a "selfie" of himself inside the Capitol as well as posted a few videos of the January 6, 2021 events. Based on this information, FBI Special Agent Christopher Mayo and Supervising Agent Gavin Gumbinner out of the Miami Field Division-Port St. Lucie Field Office contacted Mr. Mariotto by phone, who at the time, was at his home in the Georgia Mountains. Mr. Mariotto stated "I knew you guys were eventually going to call." Mr. Mariotto also stated "I'm not a member of any hate group, I got caught up in the moment." He admitted that he was inside the Capitol on January 6th and that he had taken a "selfie." Special Agent Mayo continued to question Mr. Mariotto

about whether he had video along with photographs and he stated "I got a whole crap load of video." Mr. Mariotto stated that he did not break or steal anything and stated he was going through the building chanting "USA." Mr. Mariotto stated he went to listen to Trump's speech and went out into the crowd. Mr. Mariotto stated that some of the police let people through, however, when asked by Special Agent Mayo whether he was wrong to enter and he stated "100%." Mr. Mariotto stated that he got caught up in something and is willing to take the consequences.

Mr. Mariotto returned as agreed to Florida on January 17, 2021, and voluntarily surrendered his cell phone that contained both photographs and videos of Mr. Mariotto at the Capitol. (FD-302-File Number 176-WF-3366759 Mariotto-by SA Mayo). Undersigned counsel believes this interview with Mr. Mariotto conducted by the FBI, and before he hired undersigned counsel, best reflects his mind set at the time he went into the Capitol. He did not have any weapons with him or any defensive equipment such as helmets, gas masks, goggles or body armor. He is not a member of any hate organization nor did he affiliate himself on January 6th with any person or groups that were advocating violence.

## II. LEGAL STANDARD

Section 3553 of Title 18 U.S.C. enumerates certain factors a district court is to consider when sentencing Mr. Mariotto who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of Mr. Mariotto. See 18 U.S.C. §3553(a)(1). The Court shall also consider the need for the sentence imposed to reflect the seriousness of the offense; promote respect for the law and provide just punishment; afford adequate deterrence to criminal conduct;

protect the public from further crimes of Mr. Mariotto; and provide Mr. Mariotto with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Id at §3553(a)(2)(A-D). §3553(a)

further sets forth the factors the court must consider in fulfilling this provision:

1. Nature and circumstances of the offense and the history and characteristics of the offense and the history and characteristics of Mr. Mariotto;

2. The need for the sentence imposed;

3. The kinds of sentences available;

4. The kinds of sentences and sentencing range;

5. Any pertinent policy statements issued by the sentencing commission;

6. The need to avoid unwarranted sentencing disparities among Mr. Mariotto with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense; 18 U.S.C. §3553(a)(1-7).

## III. FACTORS TO BE CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)

At sentencing, a district court must impose a sentence that is "sufficient but not greater than necessary" in light of the factors identified in §3553(a). *United States . Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010), citing *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (quoting §3553(a).

### *A. Nature and circumstances of the offense and history and characteristics of Mr. Mariotto.*

Mr. Mariotto walked freely into the Capitol and met with law enforcement who

eventually retreated to the interior of the Capitol thereby allowing Mr. Mariotto and others free access to the building. At no time did Mr. Mariotto use violence or advocate anyone else to use violence against the Capitol police. Compared to many other Class B misdemeanor cases that have been filed in this Court, Mr. Mariotto's conduct is at the bottom of the scale. First, defense is not aware of any evidence that Mr. Mariotto's entry into the Capitol was pre-planned or coordinated with anyone else, including any extremist or organized groups. His intention was to attend the rally and that did not include going into the Capitol. Second, the defense is not aware of any evidence that Mr. Mariotto incited any others to commit acts of violence or destruction. Third, the defense is not aware of any evidence that Mr. Mariotto engaged in any violence or questionable conduct towards law enforcement. Fourth, the defense is not aware of any evidence that Mr. Mariotto destroyed or stole any property from the Capitol. Fifth, it appears that Mr. Mariotto walked down various hallways, the Crypt of the Capitol, and the Rotunda. Prior to leaving the Capitol, he walked into the gallery of the Senate Chamber and took a "selfie." The defense is not aware of any evidence that Mr. Mariotto entered into any personal offices in the Capitol or actually walked on the Floor of the Senate or House Chamber.

To his credit, Mr. Mariotto voluntarily spoke with agents via phone and admitted to being inside the Capitol. He fully acknowledged his misconduct by volunteering information and answering pointed questions by the FBI agents. Further, he self-surrendered to agents in Ft. Pierce, Florida and brought with him his cell phone which contained photos and videos of Mr. Mariotto inside the Capitol.

Mr. Mariotto did not come to Washington with the intention of subverting

democracy. He came to attend a rally of President Trump and to show support for him. After Trump's rally, he walked with the crowd to the Capitol. Although he unlawfully walked into the Capitol and admitted his wrongdoing to the FBI agents in his interview on January 15, 2021, and in the Change of Plea before this Court on September 17, 2021, he did not witness protesters beating police officers, spraying gas in their faces, or destroying property. He did not witness any of this at all.

The Government concedes that Mr. Mariotto committed no violent acts and destroyed no property by virtue of the five count Information filed in USA v. Mariotto, Case Number 21-MJ-144 where he was charged in Count I - entering and roaming a restricted building or grounds in violation of Title 18 U.S.C. §1752(a); Count II-disorderly and disruptive conduct in a restricted building or grounds in violation of Title 18 U.S.C. §1752(a)(2); Count III-entering and remaining in the Gallery of Congress in violation of Title 40, U.S.C. §5104(a)(2)(b); count IV-disorderly conduct in a capitol building in violation of Title 40, U.S.C. §5104(e)(2)(D); and count V-parading, demonstrating or picketing in a Capitol building in violation of Title 40 U.S.C. §5104(e)(2)(g). Mr. Mariotto announced his intention to plead guilty and accept responsibility.

On January 22, 2021, Mr. Mariotto appeared before the Honorable United States Magistrate Judge Shaniek Maynard, Southern District of Florida, on a Criminal Complaint having been filed in Washington, District of Columbia, charging Mr. Mariotto with knowingly entering or remaining in a restricted building on grounds without lawful authority in violation of Title 18 U.S.C. §1752(a)(1)&(2) and violent entry and disorderly conduct on Capitol grounds in violation of Title 40 §5104(e)(2)(B), (D), & (G). As can be

imagined, the local press and news organizations in the West Palm Beach-Fort Pierce markets had covered the arrest of Mr. Mariotto quite extensively. The press, instead of reading the entire statute, 40 U.S.C. §5104(e)(2)(B)(D) & (G), or having their legal department read and correctly interpret what part of the statute Mr. Mariotto was actually being accused of violating, they chose to paint the picture of Mr. Mariotto's activities on January 6, 2021, as one of violence. Specifically, the only section of 40 U.S.C. §5104 that addresses the use of violence is subsection (F)-engage in an act of violence in the ground or any of the Capitol buildings.

In reviewing the Complaint initially filed against Mr. Mariotto and subsequently the Information filed, absent from both documents is 40 U.S.C. §5104(F). This failure of various news organizations to accurately report led to retracted stories and at least one acknowledgment that the facts as initially reported were wrong. After having appeared in the District Court in Fort Pierce for his Initial Appearance on January 21, 2021, and after numerous news reports of his violent entry in the Capitol, Mr. Mariotto granted a news interview with WPTV, Channel 5 news as reflected in paragraph 18 (A-D). Unlike others who had been arrested for their criminal acts arising from the January 6th breach of the Capitol and were seen on interviews validating and vindicating their behavior on January 6th, Mr. Mariotto did not use it for any other purpose than to correct what was reported and to say "I don't ever advocate violence. There are people that are good people that were there that would never, like I would never hurt anybody in my life." Further, he readily admitted he was guilty of trespass and perhaps disorderly conduct. Mr. Mariotto admitted to going "online" after January 6th and said in part" I did go online and look at a lot of these people.

I mean maybe this was a violent entry, and I was "a" part of that violent entry, but I did not do a violent entry. For a better understanding of Mr. Mariotto's statement, an actual review of the news clip puts the probation officer's recitation of what was said by Mr. Mariotto in proper context. See

https://www.wptv.com./news/region-st-lucie-county/fort-pierce/tony-mariotto-interview.

This has been a long road for Mr. Mariotto and his family. Fortunately, he has a supportive relationship with his immediate family who has stood by him since the beginning of this case. Mr. Mariotto advised the Assigned Assistant United States Attorney of his intention to plead guilty prior to the Preliminary Hearing. Mr. Mariotto waived his Preliminary Hearing. Although he expressed his desire to plead guilty early on in this process, it was not until August 10, 2021, when Mr. Mariotto received a plea offer from the Government. Mr. Mariotto pled guilty thus saving valuable judicial resources. Mr. Mariotto has endured life-long damage to his reputation. None of this will be erased from the internet. He has fully accepted responsibility for his bad judgment in entering the Capitol building by pleading guilty at the earliest possible time. As mentioned before, he has been the subject of a number of media accounts lumping him with others that were there on January 6th. His personal character and reputation will be forever tarnished.

Mr. Mariotto has never, ever had any trouble with the law in his 53 years. Outside of a few speeding tickets, all civil in nature, he has lived without violating the law. Legendary UCLA Basketball Coach John Wooden once said "the true test of a man's character is what he does when no one is watching." This quote could not be more apropos to Mr. Mariotto's life. He has for his entire life done the right thing. He is the kind

of person we all would want as a neighbor. He is honest, a family man, and trustworthy.

As the PSR correctly states, Mr. Mariotto was raised in a close-knit Italian Family who owned and operated an Italian Restaurant in Black River, New York. There, Mr. Mariotto worked from the young age of 8 wiping tables clean, busing tables, and washing dishes. At the age of 15, Mr. Mariotto moved to Florida with his family and rather than going to school, he focused on his three jobs. He realized at a young age that he liked making money and has worked extremely hard. Mr. Mariotto does not seek to minimize harm caused by his behavior by the explanation in this Sentencing Memorandum. Nonetheless, in determining what punishment is warranted, this Court should not lose sight that he did no harm, intended no harm, and regrets that he went inside the Capitol. As noted in the PSR, Mr. Mariotto enjoys his relationship with his mother and sister. When his mother turned 65 years of age, he asked her to retire so that he could care for her. Now 76 years of age, she has been financially dependent on her son since retiring. She lives in a house owned by Mr. Mariotto in Fort Pierce, FL. Mr. Mariotto's father passed away twelve (12) years ago from lung cancer.

Mr. Mariotto has been married to his wife Rachel for the past 21 years. Together, they own a house in Fort Pierce, FL and in Epworth, GA and split time between both residences. He has two children from previous relationships. Both of his children are employed with the same company where Mr. Mariotto has been employed for the past 25 years. Mr. Mariotto describes himself as a family man and does not have a lot of friends. He does very little outside of working to provide for his family. He does not drink alcohol or use illegal drugs. He also does not fly on airplanes so his travel is limited to places he can travel to by

car. He enjoys gambling, but does not consider himself a "greedy" person. As noted in the PSR, paragraph 50, Footnote 5, Mr. Mariotto has reported gambling winnings/losses in his income tax filing forms. When asked by the probation officer how he would describe himself, he answered "a lot of people have said he is funny and well humored, not a stern guy." He asserted that he enjoys making people laugh and smile. Lastly, he stated he does like to "tout himself." PSR-paragraph 50.

As noted in the PSR, Mr. Mariotto has been employed as a pork trader with a private company since January 13, 1997. His employer reported that "Anthony Mariotto has been an exemplary employee for more than 20 years.

When this Court takes a step back and looks at the entire picture of Mr. Mariotto, he is an exemplary person who has lived an exemplary life. He has worked for the same employer for 24 years. He has been married to the same woman for 21 years. He takes care of his mother not because he had to but because he chooses to. The same company that has treated him so well now employs his children. With Mr. Mariotto, it's family first.

His law abiding life and his post arrest behavior show that he is capable of being a productive citizen and the Court can rely on that as a basis to sentence him to term of probation considering the 3553 factors.

**B. NEED FOR SENTENCE IMPOSED.**

1. General deterrence -18 U.S.C. §3553(a)(2)(B)- to adequately deter others from criminal conduct.

The purpose of sentencing includes punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears no need for incapacitation,

specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. Harsh sentences imposed on those less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive and labeled as political posturing.

**Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of Mr. Mariotto.**

Mr. Mariotto's likelihood of recidivism is very low. He has cooperated fully with law enforcement and turned over evidence voluntarily. He accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. He has never tried to minimize his behavior. In fact, he clearly admitted he trespassed in the Capitol and that he may have committed disorderly conduct in an interview he gave to a local television news network. Given Mr. Mariotto's age (53), and other issues consistent with what is mentioned above, the likelihood of Mr. Mariotto ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

## C. THE KINDS OF SENTENCES AVAILABLE

The sentencing guidelines do not apply in this case. *See* PSR, paragraph 25. The

Court should not consider any conduct that Mr. Mariotto did not plead guilty to.

Mr. Mariotto asks that the Court impose a 12 month probationary sentence. In the alternative, he asks that the Court consider a non-custodial sentence with a restriction that he remain on his property except for work. Any period of incarceration would not only put his employment in jeopardy, it potentially puts the company in an extremely dangerous position in trading the commodity of pork. Mr. Mariotto has held his position of trader with the company since 1997 and not having access to the internet or his computer will paralyze the operation. For lack of a better term, Mr. Mariotto is a "workaholic" who works long hours and rarely takes any time off. Fortunately for him he is able to work anywhere he has complete access to a computer and the internet, whether that be in his home or at his office.

The Court should impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay. See

U.S.S.G §5E1.2.(a) A review of paragraph 70 of the PSR clearly indicates that Mr. Mariotto has the present ability to pay a fine.

### D. The need to avoid unwarranted sentence disparities

If this Court were to impose a sentence greater than a probationary term, community service, fine and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling where a misdemeanor was charged and pled to and resulted in no incarceration:

\*\*United States v. Anna Morgan-Lloyd, 21-cr-00164 (RCL) (Jun. 28, 2021) (sentenced to probation);
\*\*United States v. Danielle Doyle, 21-cr-00324 (TNM)(Oct. 1, 2021) (sentenced to probation even though she entered through a broken window and yelled at police officers);
\*\*United States v. Valerie Ehrke, 21-cr-00097 (PLF) (Sept. 17, 2021) (sentenced to probation);

**United States v. Jessica Bustle and Joshua Bustle,* 21-cr-00238 (TFH), ECF Nos. 42 & 44 (sentenced to supervised release with home confinement even though Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied media accounts of violence were accurate, minimized the conduct of all of the rioters, 3) called for a revolution even after the events of January 6, 4) encouraged the rioters to be proud of their actions, and 5) minimized the impact of that day on lawmakers and democracy. *See United States v. Jessica and Joshua Bustle,* 21- 00238 (TFH). Judge Hogan imposed a probationary sentence with a short period of home confinement for Ms. Bustle and an even shorter period of home confinement for Mr. Bustle. The government recommended probation in this case.

**United States v. Andrew Bennett,* Crim. No. 21-227 (JEB)(sentenced to three months home confinement and two years probation). According to the government, who recommended probation with a short term of home confinement, Mr. Bennett espoused conspiracy theories about the election, was an admirer, albeit not a member of the Proud Boys, and boasted about his conduct. According to the government, Mr. Bennett did not come to the rally in D.C. on a whim, but rather planned it for months. He posted numerous times about conspiracy theories and a fraudulent election. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!". On January 6, according to the government, Bennet began live streaming video to his Facebook page from outside the Capitol as early as 1:00 p.m. He was in the middle of the growing crowd on the West Front of the Capitol, where some taunted police officers and sporadically threw objects at them. The government alleges that someone near Bennett exhorted others to "move forward" and that Bennett yelled at a police officer. Bennett also filmed assaults on the police officers and continued to livestream events inside the building.

None of this is to suggest that Mr. Bennett should have received a sentence of incarceration, only to suggest that the distinctions the government draws are hard to justify. There is nothing materially different about Mr. Mariotto or his conduct that would justify a sentence of incarceration and such disparate treatment. The courts have sentenced some January 6th misdemeanor cases to incarceration, but the nature and circumstances of those offenses, as well as the history and characteristics of Mr. Mariotto in those cases, can be distinguished.

In *United States v. Derek Jancart and Erik Rau,* 21-cr-00467, the Honorable Judge Boasberg sentenced both to 45 days of incarceration. However, in that case, unlike Mr. Mariotto's, the prosecutors asked for four (4) months of incarceration for each, citing that the

men came to D.C. with gloves, a gas mask, and two-way radios. *Id.* Additionally, Mr. Jancart posted a video on Facebook during January 6th, where he is heard laughing at police while Mr. Rau screamed, "We have you surrounded!" Additionally, Mr. Rau, unlike Mr. Mariotto, was on probation at the time of his offense on January 6th for domestic violence. Additionally, Judge Chutkan recently sentenced another to 45 days of incarceration in *United States v. Matthew Mazzocco*, 21-cr-00054 (TSC)(October 4, 2021). However, Mr. Mazzocco blamed the violence that day on Antifa, deleted his social media accounts in an effort to obscure his actions, and refused to give law enforcement access to the body-worn camera he wore that day, claiming that he did not know where it was. In *United States. v. Reeder*, 21 CR 166(TFH), Judge Hogan sentenced Mr. Reeder to 90 days incarceration because he bragged on social media about having engaged in battles with the police inside the Capitol, showed no remorse or contrition, claimed he had no idea he could not be in the Capitol despite being tear-gassed, recorded attacks on police officers inside the Capitol, entered a second time *by forcing himself past police officers who were trying to clear the Capitol,* posted videos bragging about his actions and deleted social media accounts, and most importantly, put his hands on a police officer. Even after pleading guilty, according to the government, he portrayed himself as an innocent victim of circumstances.

Finally, in *United States v. Lori Vinson and Thomas Vinson,,* 21- cw- 355 (RBW), this Honorable Court sentenced both defendants to five (5) years probation; a $5,000.00 fine; one hundred twenty (120) hours of community service; and $500.00 in restitution. Like Mr. Mariotto, both defendants entered pleas to one (1) count parading, demonstrating, or picketing in a Capitol Building. In the Government's Sentencing Memorandum filed in Lori

Vinson's case, they recommended that this Court sentence her to thirty (30) days incarceration and $500.00 in restitution. In the Government's Sentencing Memorandum on Thomas Vinson, they recommended this Court sentence him to three (3) months home detention, three (3) years probation, sixty (60) hours of community service and $500.00 in restitution. The Government reasoned in their Sentencing Memorandum:

> *"Their conduct on January 6, 2021 was similar, but multiple search warrants and interviews in this case did not reveal the kind of propaganda and minimization of the violence by Thomas Vinson that Lori Vinson engaged in. On the other hand, the facts surrounding the disappearance of the phone and video recordings taken inside the Capitol raises concerns. Lori also agreed to cooperate with further investigation, and ultimately, both defendants accepted the first plea offer extended to them. On balance, the primary difference between these defendants is their statements after the fact, which warrant a more significant sentence for Lori Vinson than for Thomas Vinson. (See USA v. V. Thomas Vinson, 1:21: CR-00355 RBW DE#44).*

Unlike Lori Vinson, who in the days following January 6th, went on local Fox News station in her community and stated "People have asked are you sorry that you had done that, absolutely I am not, I am not sorry for that, I would do it again tomorrow." Mr. Mariotto went on a local news channel not to boast about what he did but to try and explain that he did not commit a violent entry into the Capitol on January 6th as reported in the Criminal Complaint made public at the time of his arrest and the numerous news outlets. He did so only to correct what was reported. He readily admitted that he was guilty of trespass and possible disorderly conduct. He stated "I just didn't think of it at the time. I just, now I look back and think well it's trespassing, but I didn't think about it at the time." PSR-Paragraph 18(c).

Unlike Thomas Vinson whose phone contained numerous inculpatory videos

that went missing, Mr. Mariotto, as agreed to with the agents, delivered his phone to the agents two days later voluntarily knowing very well that the absolute strongest evidence the Government had against him would be on that phone.

Similar to Lori Vinson, Mr. Mariotto has no criminal history whereas Thomas Vinson had two prior convictions for operating a motor vehicle while impaired.

Mr. Mariotto was far more cooperative with law enforcement, did not attempt to hide any evidence, in fact produced evidence and has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of those who garnered incarceration were starkly different from Mr. Mariotto's conduct and characteristics. Mr. Mariotto's actions fall on the low-end of the spectrum that day and his culpability appears to be minimal in contrast with rioters who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date. Please see attached as Exhibit "A"- Mr. Mariotto's Personal Statement.

## CONCLUSION

Considering all the applicable factors the Court will consider, Mr. Mariotto respectfully moves this court to impose a sentence of 12 months probation with community service hours and a fine. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Mariotto as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), citing *Koon v. United States*, 116 S.Ct. 2053 (1996).

DATED; 30th day of NOVEMBER 2021.

                                                   /s/:*Edward D. Reagan Esq.*
                                                   *Signature of Attorney*
                                                   Edward D. Reagan, P.A.
                                                   *Attorney Name*
                                                   0028215
                                                   *Florida Bar Number*
                                                   Edward D. Reagan, P.A.
                                                   658 W. Indiantown Road.-Suite 209
                                                   Jupiter, FL 33458
                                                          *Address*
                                                   TELE: 561-832-7443
                                                   *Edward.d.reagan@gmail.com*

## CERTIFICATE OF SERVICE

I hereby certify on the 30th day of November 2021 a copy of the same was delivered to the parties of record, by email pursuant to the Covid standing order and the rules of the Clerk of Court.

                                                   /S/
                                         EDWARD D. REAGAN ESQ.